IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Michael Vitellaro, <br><br> Plaintiff, <br><br> v. <br><br> City of Park Ridge, Frank Kaminski, County of Cook, Lynn McCarthy, and Kim Foxx <br><br> Defendants. | No. 24-cv-04797 <br> Judge Franklin U. Valderrama |

### ORDER

Plaintiff Michael Vitellaro (Vitellaro) was a sergeant with the Chicago Police Department. R.[1] 1, Compl. ¶ 16. While off-duty, he detained a young man who he believed stole his son's bicycle from the Park Ridge library. *Id.* ¶¶ 16, 20. Vitellaro called the Park Ridge Police Department to report his detention of the young man. *Id.* ¶ 20. Park Ridge Police Officers arrived and conducted a preliminary investigation, but made no arrests. *Id.* ¶¶ 22–23. The incident went viral. *Id.* ¶ 26. Community members accused the Park Ridge Police Department of favoritism and racism and insisted that Vitellaro be criminally charged. *Id.* ¶¶ 28–29. Lynn McCarthy (McCarthy), an Assistant State's Attorney (ASA), subsequently authorized felony charges for Aggravated Battery and Official Misconduct against Vitellaro, who was arrested and taken into custody. *Id.* ¶¶ 33–34. Following a bench trial, Vitellaro was acquitted of all criminal charges. *Id.* ¶ 37.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

Vitellaro sued the City of Park Ridge (Park Ridge); Frank Kaminski, the Chief of the Park Ridge Police Department; the County of Cook (Cook County); McCarthy; and the Cook County State's Attorney, Kim Foxx (collectively, Defendants) under 42 U.S.C. § 1983 for deprivation of liberty without probable cause, federal malicious prosecution, and state law claims. Compl. Before the Court is McCarthy's Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 24, Mot. Dismiss. For the following reasons, the Court grants McCarthy's motion to dismiss.

## Background[2]

On July 1, 2022, Nicolas Vitellaro (Nicholas) rode his new bicycle to the Park Ridge Library in Park Ridge. Compl. ¶ 10. Nicolas parked his bicycle outside the library in a designated location. *Id.* ¶ 11. Upon leaving the library, Nicolas discovered that his bicycle was missing. *Id.* ¶ 12. Nicholas called his father, Michael Vitellaro, and told him that his bicycle was missing. *Id.* ¶ 13. Vitellaro was a sergeant with the Chicago Police Department, who was off duty at the time when he received the telephone call. *Id.* ¶ 16. Vitellaro drove from his home in Chicago to Park Ridge to meet his son. *Id.* ¶ 15. Vitellaro immediately reported the theft to the Park Ridge Police Department. *Id.* ¶ 17.

Vitellaro and Nicholas then drove around Park Ridge looking for the bicycle. Compl. ¶ 18. Vitellaro located Nicholas's bicycle, parked in a different location from where Nicolas left it. *Id.* ¶ 20. Vitellaro approached a young man, J.N., who was in

---

[2]The Court accepts as true all of the well-pled facts in the Complaint and draws all reasonable inferences in favor of Vitellaro. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

2

possession of the bicycle. *Id*. ¶¶ 19–20. Vitellaro announced his authority and detained J.N. and called the Park Ridge Police Department to report his detention of J.N. *Id*. ¶ 20. At the time Vitellaro detained J.N. there were numerous other youths present in the immediate vicinity. *Id*. ¶ 22. Park Ridge Police Officers arrived shortly thereafter and conducted a preliminary investigation, which included interviewing Vitellaro, J.N., and other witnesses, and during which they became immediately aware that Vitellaro was a sergeant with the Chicago Police Department. *Id*. ¶¶ 22, 24. No arrests, however, were made. *Id*. In the days thereafter, Park Ridge Police Officers learned that J.N. was in possession and control of Nicholas's bicycle when he was detained by Vitellaro. *Id*. ¶ 25.

The incident became a viral topic on social media hosted by the Park Ridge Police Department, as well as several other sites. Compl. ¶ 26. The incident also generated outrage in the community directed at Frank Kaminski, the Park Ridge Police Department Chief, as well as the Park Ridge Police Department for failing to arrest Vitellaro. *Id*. ¶ 28. Some community members accused the Park Ridge Police Department of favoritism and racism and insisted that Vitellaro be criminally charged. *Id*. ¶¶ 28–29.

ASA McCarthy, according to Vitellaro, participated in the investigation of the incident. Compl. ¶ 30. After conducting her investigation, McCarthy, alleges Vitellaro, determined that Vitellaro was acting in his official capacity. *Id*. ¶ 32. McCarthy subsequently authorized felony charges for Aggravated Battery and Official Misconduct against Vitellaro, and on August 18, 2022, Vitellaro was arrested

and taken into custody. *Id.* ¶¶ 33–34. Following his arrest, Vitellaro was relieved of his duties as a sergeant with the Chicago Police Department. *Id.* ¶ 36. Vitellaro was acquitted of all criminal charges after a bench trial. *Id.* ¶ 37.

Vitellaro sued Defendants, asserting Section 1983 claims for: deprivation of liberty without probable cause against Kaminski and Park Ridge (Count I); deprivation of liberty without probable cause against McCarthy, Foxx, and Cook County (Count II); due process federal malicious prosecution against Kaminski and Park Ridge (Count III); due process federal malicious prosecution against McCarthy, Foxx, and Cook County (Count IV); as well as Illinois state law claims for: malicious prosecution against Kaminski and Park Ridge (Count V); malicious prosecution against McCarthy, Foxx, and Cook County (Count VI); intentional infliction of emotional distress against Kaminski and Park Ridge (Count VII); intentional infliction of emotional distress against McCarthy, Foxx, and Cook County (Count VIII); *respondeat superior* against Park Ridge (Count IX); *respondeat superior* against Cook County (Count X); indemnification against Park Ridge (Count XI); and indemnification against Cook County (Count XII). Compl. McCarthy filed a motion to dismiss Counts II, IV, VI, and VIII pursuant to Federal Rule of Civil Procedure 12(b)(6) Mot. Dismiss. The fully briefed motion is before the Court.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and

4

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

As stated above, in Counts II, IV, VI and VIII, Vitellaro asserts claims against McCarthy for deprivation of liberty without probable cause, federal malicious prosecution, state law malicious prosecution, and state law intentional infliction of emotional distress. Compl. McCarthy argues that because all of the allegations of misconduct against her involve her approval and initiation of criminal charges, all Counts should be dismissed based on absolute prosecutorial immunity. Mot. Dismiss at 4.

Prosecutors enjoy absolute immunity from Section 1983 liability when the prosecutor acts as an advocate for the state. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Hill v. Coppleson*, 627 F.3d 601, 605 (7th Cir. 2010). This immunity emanates from a "concern that harassment by unfounded litigation would cause a

deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976). Prosecutorial immunity is "based upon a functional approach that considers the nature of the prosecutor's activities in the case." *Crowder v. Barrett*, 2022 WL 864519, *29 (N.D. Ill. March 23, 2022) (cleaned up).[3] The availability of absolute prosecutorial immunity turns on "whether the prosecutor was acting as an officer of the court and performing actions related to the judicial rather than investigative phase of the criminal process." *Brunson v. Murray*, 843 F.3d 698, 704 (7th Cir. 2016); *see also Whitlock v. Brueggemann*, 682 F.3d 567, 579–80 (7th Cir. 2012) ("Where a litigant presents a due process claim . . . the question of immunity turns on the capacity or function that the prosecutor was performing at the time of the alleged wrongful conduct.").

If a prosecutor's function was quasi-judicial, the prosecutor enjoys absolute immunity. *See Greenpoint Tactical Income Fund v. Pettigrew*, 38 F.4th 555, 565 (7th Cir. 2022). Prosecutorial immunity "shields prosecutors even if they act maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (cleaned up). On the other hand, when a prosecutor's acts are investigative and unrelated to the preparation of and initiation of judicial proceedings, no absolute immunity attaches

---

[3] This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

for that conduct. *Hill*, 627 F.3d at 605; *see also Patterson v. Burge*, 328 F. Supp. 2d 878, 892 (N.D. Ill. 2004) (if the function was administrative or investigatory, the prosecutor enjoys only qualified immunity). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991).

McCarthy argues that she is entitled to prosecutorial immunity, as the complaint merely alleges that she, as the ASA, initiated criminal charges against Vitellaro. Mot. Dismiss at 4. These actions, however, asserts McCarthy, fall squarely within absolute prosecutorial immunity. *Id.* at 6–7 (citing *Jones v. Cummings*, 998 F.3d 782, 787–88 (7th Cir. 2021); *Smith*, 346 F.3d, at 741; *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986); *Crowder v. Barrett*, 2023 WL 3145312, at *3 (7th Cir. Apr. 28, 2023)). Prosecutorial immunity applies, contends McCarthy, even if the prosecutor initiates charges without probable cause. *Id.* at 7.

Vitellaro counters that contrary to McCarthy's contention, he does more than allege that McCarthy's role was merely the initiation of criminal charges against him. Rather, asserts Vitellaro, he alleges that McCarthy actively participated in the investigation which led to him being charged with criminal offenses. R. 27, Resp. at 1 (citing Compl. ¶ 30). Not only that, but Vitellaro argues that he alleges that the evidence gathered never rose to the level of probable cause. *Id.* at 2. Vitellaro points out that "[w]hen prosecutors conduct police-like activity outside their prosecutorial role, the rationale supporting absolute immunity does not exist, and a prosecutor

7

enjoys the same immunity as police officers, qualified immunity." Resp. at 3 (citing, *inter alia*, *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997)).

As an initial matter, the Court agrees with McCarthy that she is absolutely immune for any claims stemming from her role in initiating or continuing the prosecution against Vitellaro. *See Brunson*, 843 F.3d at 704–05 (prosecutor absolutely immune for initiating prosecution). The Court also agrees with McCarthy that absolute immunity applies regardless of whether she knew or believed there was probable cause. *See Smith*, 346 F.3d, at 741; *see also Spiegel v. Rabinovitz*, 121 F.3d 251, 257 (7th Cir. 1997) ("[A] prosecutor is entitled to absolute immunity for his malicious prosecution of someone whom he lacked probable cause to indict."). Similarly, absolute immunity applies regardless of McCarthy's motives for bringing and sustaining the charges. As McCarthy argues in her motion, Seventh Circuit law has long held that a prosecutor is absolutely immune from suit even where he or she "initiates charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." Mot. Dismiss at 5 (quoting *Henry*, 808 F.2d at 1238 and citing *Crowder*, 2023 WL 3145312, at *3 ("But determining whether and how to charge crimes is a quintessential decision for which a prosecutor enjoys absolute immunity—even if he errs.")).

That is not the end of the analysis, however, as Vitellaro contends that McCarthy is not entitled to absolute immunity for any claims based on her role in the investigation before there was probable cause. McCarthy does not, and indeed cannot, dispute that a prosecutor may not be entitled to absolute immunity based on actions

8

he or she takes during the investigative stage. *See* R. 31, Reply at 3 (citing *Wilson v. Burge*, 667 F. Supp. 3d 785, 832–33 (N.D. Ill. 2023) (declining to find that prosecutor was entitled to absolute immunity based on coercion of plaintiff's false confession during the investigative stage, even if he was absolutely immune for his decision to initiate charges)). Instead, McCarthy argues that Vitellaro's claims against her are all premised on her decision to initiate and continue criminal proceedings against him. *Id.* at 4. Even in his attempt to amend his pleadings via his response, contends McCarthy, his additional allegations merely allege that McCarthy "worked alongside the police during the investigation and supposedly learned no probable cause existed." *Id.* (citing Resp. at 2). From McCarthy's perspective, there is nothing unconstitutional about that conduct. *Id.*

As indicated above, courts within the Seventh Circuit have found that that pre-prosecution conduct can be either quasi-judicial, and therefore subject to absolute immunity, or investigative, and therefore outside the protection of absolute immunity. *Compare Greenpoint Tactical Income Fund*, 38 F.4th at 566 (absolute immunity where plaintiff alleged only that prosecutor assisted and "directed" agent in preparing search warrant, without any allegations as to the "supposed direction"); *Harris v. City of Chicago*, 2015 WL 1331101, at *6 (N.D. Ill. Mar. 19, 2015) (absolute immunity applied where "[a]t most, Plaintiff allege[d] Defendant ASAs listened to and memorialized her confession and noted Plaintiff's complaints that she had been mistreated. Plaintiff [did] not allege Defendant ASAs asked any questions or tried to develop any evidence.") *with Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1103 (7th

9

Cir. 2015) (prosecutor who swore to the truth of the facts in an information or warrant application, rather than just signing and filing it, does not act as an advocate and is not covered by absolute immunity); *Fields v. Wharrie*, 740 F.3d 1107, 1113 (7th Cir. 2014) (prosecutor was not entitled to absolute immunity when he, "acting pre-prosecution as an investigator, fabricate[d] evidence and introduce[d] the fabricated evidence at trial").

Here, as Vitellaro points out, he alleges that McCarthy "participated in the investigation of the incident in regard to the public claims of official misconduct" before his arrest and prosecution. Resp. at 1–2; Compl. ¶¶ 30–35. In response, Vitellaro attempts to bolster his allegations related to McCarthy's role in the investigation by contending that the Complaint alleged that McCarthy "participated in the investigative stage with respect to working up the case from the inception, gathering evidence, interviewing witnesses in conjunction with police officials, and advising police officers, during a period of many days prior to [Vitellaro] being charged with criminal offenses." Resp. at 2. As McCarthy points out in her reply, none of those allegations, however, are pled in the Complaint. Reply at 4. As in the Court's order granting Cook County and Kim Foxx's motion to dismiss, the Court declines to exercise its discretion to construe these additional factual allegations as a constructive motion to amend.[4] R. 41 at 9 (citing *Schmees v. HC1.COM, Inc.*, 77 F.4th

---

[4]The Seventh Circuit in *Schmees* found that it is "rarely appropriate" for a district court to treat new claims or allegations presented for the first time in briefing as a constructive motion to amend. 77 F.4th at 489–90. Notably, Vitellaro did not request that the Court construe his response as a motion to constructively amend.

10

483, 488 (7th Cir. 2023)). Even if the Court were to consider those allegations, however, they would not change the Court's analysis.

Viewing the allegations in the light most favorable to Vitellaro, and drawing all reasonable inferences in his favor, the Court finds that, as pled, each claim against McCarthy is based upon McCarthy's alleged wrongdoing related to her decision to initiate and continue the prosecution against Vitellaro. Mot. Dismiss at 8; *see* Compl. ¶¶ 61–64, 69, 81–84, 88–89, 105–110, 113, 119–121. As discussed above, McCarthy is absolutely immune for her role in charging and prosecuting Vitellaro, as that is unequivocally the role of an advocate for the state. *See Jones*, 998 F.3d at 787–88. True, as stated above, the Complaint alleges that McCarthy participated in the investigation leading up to Vitellaro being charged with criminal offenses. Compl. ¶ 30. And a reasonable inference is that, during that investigation, she acted more like an investigator than as an advocate for the State. But, even in the bolstered allegations included in his response, Vitellaro does not allege that McCarthy engaged in any wrongdoing during the investigation. As the Seventh Circuit stated in *Fields v. Wharrie*, there is no tort or Section 1983 action "without an actionable injury caused by the defendant's wrongful act." 740 F.3d at 1111 (citing *Buckley*, 20 F.3d at 796); *see also Whitlock*, 682 F.3d at 579–80 ("Where a litigant presents a due process claim . . . the question of immunity turns on the capacity or function that the prosecutor was performing *at the time of the alleged wrongful conduct*.") (emphasis added); *Liakopoulos v. Welch, et al.*, 24-cv-7781 Dkt. No. 64 at 4 (N.D. Ill. July 11, 2025) ("It is true that as alleged, McCarthy and Janicki participated in the

11

investigation . . . . Critically, however, Plaintiff does not allege any wrongdoing related to the investigation itself.").[5]

Vitellaro does not allege that McCarthy swore to any facts in an affidavit or indictment, as did the prosecutor in *Olson*. Nor does he allege that McCarthy omitted exculpatory evidence in bad faith or fabricated evidence, as in *Fields* or *Ezell v. City of Chicago*, 2024 WL 278829, at *13 (N.D. Ill. Jan. 24, 2024), cited by Vitellaro, Resp. at 4.

The only case cited by Vitellaro in support of his position that absolute immunity does not apply to an investigative act in which he alleges—in his response, not in the Complaint—that McCarthy engaged, providing advice to police during an investigation, is distinguishable. Resp. at 4 (citing *Heidelberg v. Manias*, 2019 WL 4862069, at *14 (C.D. Ill. Mar. 26, 2019)). In *Heidelberg*, a non-binding district court case, the court found that the prosecutor was not entitled to absolute immunity where he opposed the plaintiff's post-conviction petition via communications with other special prosecutors who replaced him. 2019 WL 4862069, at *4, 14. True, *Heidelberg* cited a Sixth Circuit case for the proposition that "provid[ing] information and advice to an investigative body" is outside the ambit of absolute immunity. *Id.* at *14 (quoting *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003)). The prosecutor in *Spurlock*, however, engaged in clear misconduct: threatening retaliation against a witness if he did not maintain false testimony against the plaintiff during an

---

[5]McCarthy moved to supplement her motion to dismiss with the Court's decision in *Liakopoulos*, which the Court allowed. R. 38, R. 39. The Court gave Vitellaro an opportunity to respond to the additional authority on or before July 28, 2025. To date, Vitellaro has not filed a response.

12

investigation into the prosecutor himself. 330 F.3d at 799. As discussed above, Vitellaro alleges only cursorily that McCarthy participated in the investigation.

True, Vitellaro alleges that McCarthy's investigation revealed that there was no probable cause to arrest him, but such an absence of probable cause supports his claim that she violated his rights by prosecuting him, not that she engaged in any misconduct while investigating. Without alleging that McCarthy did anything wrong during the investigation, the gravamen of the allegations against McCarthy emanates from her charging decision. A decision that squarely falls within the protection of qualified immunity.

Because Vitellaro's state law claims for malicious prosecution and intentional infliction of emotional distress are based on the same factual allegations as his Section 1983 claims, Vitellaro fails to demonstrate that McCarthy is not entitled to absolute immunity as to the state claims in addition to the federal claims. "The federal and Illinois state doctrines of prosecutorial immunity are coterminous and prosecutors acting within the scope of their prosecutorial duties are absolutely immune from liability under state law." *Dickman v. Office of the State's Atty*, 2018 WL 1377907, at *4, 6 (N.D. Ill. Mar. 16, 2018) (cleaned up) (malicious prosecution and intentional infliction of emotional distress claims were barred by absolute immunity).

## Conclusion

For the foregoing reasons, the Court grants McCarthy's Motion to Dismiss [24]. Like Cook County and Foxx, McCarthy requests that the dismissal be with prejudice, Mot. Dismiss at 9, whereas Vitellaro requests leave to amend "to allege additional

matters, including additional factual material," Resp. at 6. "Although the current claim does not indicate any exception to prosecutorial immunity, out of an abundance of caution, the dismissal will be without prejudice," and Vitellaro may amend his Complaint against McCarthy if he is able, consistent with his Rule 11 obligations, to allege that McCarthy was individually involved in any unconstitutional pre-prosecution or investigatory conduct. *Rector v. Searby*, 2019 WL 3429418, at *1 (S.D. Ill. July 30, 2019). However, "to the extent [Vitellaro] is basing his malicious prosecution claim on [McCarthy's] decision to initiate criminal charges against him, that portion of the claim is barred by absolute immunity and is dismissed with prejudice." *Van Guilder v. Glasgow*, 588 F. Supp. 2d 876, 881 (N.D. Ill. 2008). The remaining motion to dismiss [28] remains under advisement.

Franklin U. Valderrama
United States District Judge

Dated: July 31, 2025